IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**MARY C. DRAUGHN,**

      **Plaintiff,**

**v.** // CIVIL ACTION NO. 1:13CV148
                                   (Judge Keeley)

**NATIONAL UNION FIRE INSURANCE**
**COMPANY OF PITTSBURGH, PA, and**
**CHARTIS CLAIMS, INC.**

      **Defendants.**

### MEMORANDUM OPINION AND ORDER DECLARING EXHAUSTION REQUIREMENT ENFORCEABLE AND DENYING PLAINTIFF'S MOTION TO CERTIFY QUESTION [DKT. NO. 15]

Pending before the Court are the parties' legal memoranda debating whether, under West Virginia law, an insurer of underinsured motorist coverage may delay the payment of benefits to an injured insured on the basis of its policy's exhaustion requirement, or whether such requirements are void as against public policy. The plaintiff, Mary C. Draughn ("Draughn"), also has requested that the Court certify this question to the West Virginia Supreme Court of Appeals (dkt. no. 15).

For the reasons that follow, the Court **CONCLUDES** that 1) under West Virginia's underinsured motorist law, exhaustion requirements in such policies are not void as against public policy; 2) the clear and unambiguous language of the exhaustion clause in defendant's policy controls; and 3) there is no need to certify any question to the West Virginia Supreme Court of Appeals.

**DRAUGHN v. HARMAN, ET AL.**                                                 **1:13CV148**

**MEMORANDUM OPINION AND ORDER DECLARING
EXHAUSTION REQUIREMENT ENFORCEABLE AND DENYING
PLAINTIFF'S MOTION TO CERTIFY QUESTION [DKT. NO. 15]**

## I. BACKGROUND

From July 1, 2012 to July 1, 2013, the State of West Virginia was covered by an insurance policy issued by the defendant, National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union"), through its authorized representative, defendant Chartis Insurance, Inc. ("Chartis"). (Dkt. No. 14-1). The National Union policy provides in pertinent part as follows:

> A. Coverage
>
> 1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured" or "underinsured motor vehicle." The damages must result from "bodily injury" sustained by the "insured," or "property damage" caused by an "accident." The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured" or "underinsured motor vehicle."
>
> 2. With respect to damages resulting from an "underinsured motor vehicle," we will pay under this coverage only if . . .
>
>    a. The limits of any applicable liability bonds or policies have been exhausted by judgments or payments . . . .

(Dkt. No. 14-1 at 19-20).

Taylor County Senior Citizens, Inc. ("TCSC"), a State agency, qualified as an additional insured under the National Union policy,

**DRAUGHN v. HARMAN, ET AL.** 1:13CV148

**MEMORANDUM OPINION AND ORDER DECLARING
EXHAUSTION REQUIREMENT ENFORCEABLE AND DENYING
PLAINTIFF'S MOTION TO CERTIFY QUESTION [DKT. NO. 15]**

which entitled it to comprehensive auto liability coverage, including underinsured motorist ("UIM") coverage, with a $1 million limit. (Dkt. No. 14-2). On July 26, 2012, in Grafton, West Virginia, a TCSC van collided with a vehicle driven by Shelby L. Harman ("Harman"), whom police later concluded was at fault for the accident. Draughn was a passenger in the TCSC van at the time of the accident and suffered severe and permanent injuries as a result of the collision. Because her damages exceeded the $25,000 coverage limit available under Harman's auto insurance policy with Westfield Insurance Company ("Westfield"), Draughn notified Chartis on August 24, 2012 that she would be filing a claim to recover under TCSC's UIM coverage, pursuant to the National Union policy.[1] (Dkt. No. 14-3).

On January 29, 2013, Draughn sent a letter to Chartis demanding payment of $750,000, and requesting that Chartis contact her within twenty days to discuss settlement of her UIM claim. (Dkt. No. 14-5). When neither Chartis nor National Union responded to her letter, Draughn filed this first party bad faith claim in the Circuit Court of Taylor County, West Virginia on April 19,

---

[1] The parties do not dispute that Draughn was covered under the National Union policy's UIM provision.

3

**DRAUGHN v. HARMAN, ET AL.** 1:13CV148

**MEMORANDUM OPINION AND ORDER DECLARING
EXHAUSTION REQUIREMENT ENFORCEABLE AND DENYING
PLAINTIFF'S MOTION TO CERTIFY QUESTION [DKT. NO. 15]**

2013. National Union and Chartis removed the case to federal court on May 23, 2013.

On May 3, 2013, Westfield offered to pay Draughn its policy limits of $25,000 in exchange for Draughn's full release of all claims against Harman, as well as National Union's waiver of its subrogation rights. (Dkt. No. 14-6). On May 17, 2013, National Union's parent company, AIG, notified Westfield and Draughn that it would waive its subrogation rights against Harman.

On June 18, 2013, AIG accepted Draughn's offer to settle her UIM claim for $750,000; however, it made its acceptance contingent on receiving notice that Draughn had either exhausted or constructively exhausted the Westfield policy's liability limits. As AIG explained in its letter:

> [E]xhaustion of Westfield's limit of liability is a condition of coverage under the underinsured motorist coverage portion of the National Union policy. West Virginia law allows for constructive exhaustion. Therefore, actual payment by Westfield of some amount of money to Ms. Draughn to settle the claim against Ms. Harman is required in order to trigger National Union's duty to pay underinsured motorist benefits to Ms. Draughn. . . . [W]e at National Union have not yet received notice of Ms. Draughn actually receiving payment of any money by Westfield. Please let me know when this condition is satisfied.

(Dkt. No. 15-5).

**DRAUGHN v. HARMAN, ET AL.**                                    **1:13CV148**

**MEMORANDUM OPINION AND ORDER DECLARING
EXHAUSTION REQUIREMENT ENFORCEABLE AND DENYING
PLAINTIFF'S MOTION TO CERTIFY QUESTION [DKT. NO. 15]**

On June 21, 2013, Draughn's attorney notified Chartis that "I have not yet received payment from Westfield of their policy limits of $25,000," and confirmed that "we have a tentative resolution of Ms. Draughn's underinsurance motorist benefits claim." (Dkt. No. 14-10). Five days later, on June 26, 2013, Westfield notified Chartis that it had mailed a check for $25,000 (its policy limits) to Draughn on June 24, 2013. (Dkt. No. 14-11). Thereafter, on July 3, 2013, National Union and Chartis mailed a UIM settlement draft in the amount of $750,000, together with a release to Draughn. (Dkt. No. 14-12). Draughn signed the settlement and release agreement on July 5, 2013. (Dkt. No. 14-13).

On August 2, 2013, the Court conducted a scheduling conference in this first party bad fath case, during which the question arose as to whether the defendants' delay in settling Draughn's UIM claim was justified on the basis of the exhaustion requirement in National Union's policy. Following that conference, the parties briefed the question, to which the Court now turns.

## II. DISCUSSION

### A.

West Virginia's UIM statute requires insurers to provide their insureds with the option to purchase UIM insurance:

5

**MEMORANDUM OPINION AND ORDER DECLARING
EXHAUSTION REQUIREMENT ENFORCEABLE AND DENYING
PLAINTIFF'S MOTION TO CERTIFY QUESTION [DKT. NO. 15]**

> [S]uch policy or contract shall provide an option to the insured with appropriately adjusted premiums to pay the insured all sums which he shall legally be entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle up to an amount not less than limits of bodily injury liability insurance and property damage liability insurance purchased by the insured without setoff against the insured's policy or any other policy.

W. Va. Code § 33-6-31(b); see also Kronjaeger v. Buckeye Union Ins. Co., 490 S.E.2d 657, 665 (W. Va. 1997). "Insurers may incorporate such terms, conditions and exclusions in an automobile insurance policy as may be consistent with the premium charged, so long as any such exclusions do not conflict with the spirit and intent of the uninsured and underinsured motorists statutes." Syl. Pt. 3, Deel v. Sweeney, 383 S.E.2d 92, 92-93 (W. Va. 1989); see also W. Va. Code § 33-6-31(k).

Draughn argues that "the condition in National Union's policy requiring the plaintiff to 'exhaust' the tortfeasor's liability insurance coverage, by payments or judgments, in order to activate National Union's duty to pay under the UIM coverage is unenforceable as contrary to West Virginia law." (Dkt. No. 15 at 6) (emphasis in original). She relies primarily on Syl. Pt. 5 in Pristavec v. Westfield Ins. Co., 400 S.E.2d 575, 576 (W. Va. 1990), which states: "Underinsured motorist coverage is activated under W.

**DRAUGHN v. HARMAN, ET AL.** 1:13CV148

**MEMORANDUM OPINION AND ORDER DECLARING
EXHAUSTION REQUIREMENT ENFORCEABLE AND DENYING
PLAINTIFF'S MOTION TO CERTIFY QUESTION [DKT. NO. 15]**

Va. Code 33-6-31(b), as amended, when the amount of such torfeasor's motor vehicle liability insurance actually available to the injured person in question is less than the total amount of damages sustained by the injured person . . . ." In the event the Court rejects her public policy argument, Draughn argues as an alternative that the question should be certified to the West Virginia Supreme Court of Appeals.

Contrary to Draughn's argument, West Virginia's highest court has addressed the issue of exhaustion on several occasions, and has never voided an exhaustion requirement in a UIM policy on public policy grounds. In Syl. Pt. 4 of <u>Postlethwait v. Boston Old Colony Ins. Co.</u>, for example, it held that "[a] plaintiff is not precluded . . . from suing an [UIM] insurance carrier <u>if the plaintiff has settled with the tortfeasor's liability carrier for the full amount of the policy</u> and obtained from the [UIM] insurance carrier a waiver of its right of subrogation against the tortfeasor." 432 S.E.2d 802, 803 (W. Va. 1993) (emphasis added). And, in <u>Arndt v. Burdette</u>, 434 S.E.2d 394, 401 (W. Va. 1993), the court determined that not only <u>Postlethwait</u>, but also <u>Pristavec</u> (the case on which Draughn relies), supported the UIM insurer's argument that, "in

**DRAUGHN v. HARMAN, ET AL.                              1:13CV148**

**MEMORANDUM OPINION AND ORDER DECLARING
EXHAUSTION REQUIREMENT ENFORCEABLE AND DENYING
PLAINTIFF'S MOTION TO CERTIFY QUESTION [DKT. NO. 15]**

order to recover [UIM] benefits, the [injured insured] first had to exhaust the limits of the tortfeasors' liability policies."

As well, in Castle v. Williamson, the exhaustion clause under review there provided that "[w]e'll pay <u>damages</u> under this coverage caused by an accident with an <u>underinsured motor vehicle</u> only after the limits of liability under any applicable liability bonds or policies have been exhausted by payment of judgments or settlements." 453 S.E.2d 624, 629 (W. Va. 1994) (emphasis in original). The Supreme Court held that the policy "contains clear and unambiguous language that underinsurance under the policy is only activated once the limits of liability under any applicable liability policies have been exhausted." Id. at 630.

A decade later, the Supreme Court again addressed the issue of exhaustion in Horace Mann Ins. Co. v. Adkins, 599 S.E.2d 720 (W. Va. 2004). In that case, the Adkinses' son was killed in an auto accident when the car in which he was riding pulled into oncoming traffic.[2] Id. at 722. The other car involved in the accident was being driven by Dr. James Brown, but was owned by Lynn Brown. Id.

---

[2] Although the Supreme Court referred to Mr. and Mrs. Adkins as the "Adkins" throughout its opinion, here, the Court refers to the couple as the "Adkinses." See The Chicago Manual of Style § 6.11 (14th ed. 1993).

8

**DRAUGHN v. HARMAN, ET AL.                              1:13CV148**

**MEMORANDUM OPINION AND ORDER DECLARING
EXHAUSTION REQUIREMENT ENFORCEABLE AND DENYING
PLAINTIFF'S MOTION TO CERTIFY QUESTION [DKT. NO. 15]**

at 722.  The Browns were not married at the time of the accident and consequently had two separate automobile insurance policies. Id.  Each of those policies provided liability limits of $300,000 for auto insurance, but Dr. Brown's policy also included $1 million in umbrella coverage.  Id.  Ultimately, Dr. Brown's insurer tendered $500,000 to the Adkinses, while Mrs. Brown's insurer tendered $255,000.  Id. at 723.

Subsequently, Horace Mann, which insured the Adkinses, filed a declaratory action to determine its duty to pay UIM benefits in light of the following exhaustion requirement in its policy: "There is no [UIM bodily injury] coverage until the **insured's** damages exceed the limits of all bodily injury liability insurance policies or bonds applicable to the accident and those limits of liability that apply to the **bodily injury** have been used up by payments of judgments or settlements."  Id. (emphasis in original).  The circuit court granted summary judgment to Horace Mann on the exhaustion issue.  Id.

On appeal, the West Virginia Supreme Court of Appeals had to resolve "whether the exclusionary language, which directs [the] insured to exhaust all applicable policies of liability insurance before he/she may collect [UIM] benefits under the subject Horace

9

**DRAUGHN v. HARMAN, ET AL.**                              1:13CV148

**MEMORANDUM OPINION AND ORDER DECLARING
EXHAUSTION REQUIREMENT ENFORCEABLE AND DENYING
PLAINTIFF'S MOTION TO CERTIFY QUESTION [DKT. NO. 15]**

Mann policy, requires the actual exhaustion of all applicable coverages or whether a constructive exhaustion of such coverage will suffice." Id. at 724. In deciding the question, the Supreme Court adopted the doctrine of constructive exhaustion, which "treats an insured who has settled with a tortfeasor's insurer for less than full policy limits as if he/she had actually received the full policy limits." Id. It described the doctrine as "the most equitable balance of the insured's and insurer's competing interests." Id. at 728.

Here, any reliance on the doctrine of constructive exhaustion is misplaced, for it applies where the insured has recovered only a portion of the liability limits of the tortfeasor's policy, and subsequently seeks UIM benefits under its own policy. In such a case, constructive exhaustion effectively nullifies any exhaustion requirement in the injured insured's policy, thereby allowing the injured insured to recover UIM benefits even though he or she did not recover the full limits of the tortfeasor's policy. In this case, however, Draughn recovered the full limits of Harman's policy on June 24, 2013.

**B.**

It is also apparent from the cases discussed above that Draughn's public policy argument fails. Although the West Virginia

**DRAUGHN v. HARMAN, ET AL.** 1:13CV148

**MEMORANDUM OPINION AND ORDER DECLARING
EXHAUSTION REQUIREMENT ENFORCEABLE AND DENYING
PLAINTIFF'S MOTION TO CERTIFY QUESTION [DKT. NO. 15]**

Supreme Court of Appeals has had numerous opportunities to void exhaustion clauses, it has never done so. Moreover, the United States District Court for the Southern District of West Virginia has rejected a similar public policy argument, concluding that "exhaustion clauses generally do not appear to be against West Virginia's public policy." Leslie v. W.H. Transp. Co., 338 F. Supp. 2d 684, 690 (S.D.W. Va. 2004). Finally, in light of the precedent discussed above, Draughn's reliance on cases from other jurisdictions that have voided exhaustion clauses is unpersuasive.

**C.**

Having determined that constructive exhaustion does not apply to the facts in this case, and that exhaustion requirements do not violate West Virginia's public policy, the Court is left with the clear and unambiguous language of the National Union policy's exhaustion clause, which requires that "[t]he limits of any applicable liability bonds or policies [be] exhausted by judgments or payments" before National Union is obligated to pay UIM benefits. Under West Virginia law, "[w]here the provisions in an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." State Auto Prop. &

**DRAUGHN v. HARMAN, ET AL.                              1:13CV148**

**MEMORANDUM OPINION AND ORDER DECLARING
EXHAUSTION REQUIREMENT ENFORCEABLE AND DENYING
PLAINTIFF'S MOTION TO CERTIFY QUESTION [DKT. NO. 15]**

Cas. Ins. Co. v. Wohlfeil, 889 F. Supp. 2d 799, 802 (N.D.W. Va. 2012) (quoting Glen Falls Ins. Co. v. Smith, 617 S.E.2d 760, 767-68 (2005)).

### III. CONCLUSION

For the reasons discussed, the Court **CONCLUDES** that National Union and Chartis acted within their rights by demanding notice of at least partial payment under the Westfield policy before they would disburse UIM benefits to Draughn. Furthermore, the Court **DECLARES** as follows:

1) The exhaustion requirement in National Union's policy of underinsured motorist coverage is not void as against public policy; and

2) The language in the policy clearly and unambiguously required exhaustion, or constructive exhaustion, of Harman's liability policy limits before National Union incurred the obligation to pay UIM benefits to Draughn.

Finally, based on these holdings, the Court finds no good cause to certify Draughn's proposed question to the West Virginia Supreme Court of Appeals, and **DENIES** Draughn's motion (dkt. no. 15). Draughn has ten (10) days from the issuance of this

**DRAUGHN v. HARMAN, ET AL.**                                    **1:13CV148**

**MEMORANDUM OPINION AND ORDER DECLARING
EXHAUSTION REQUIREMENT ENFORCEABLE AND DENYING
PLAINTIFF'S MOTION TO CERTIFY QUESTION [DKT. NO. 15]**

Memorandum Opinion and Order to notify the Court whether she intends to pursue her bad faith claim against the defendants.

It is so **ORDERED.**

The Court directs the Clerk to transmit copies of this Order to counsel of record.

DATED: April 11, 2014.

                                         /s/ Irene M. Keeley
                                         IRENE M. KEELEY
                                         UNITED STATES DISTRICT JUDGE